UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

PETROTERMINAL DE PANAMA, S.A.,

                    Plaintiff,                    14 Civ. 8614

     -against-                                    OPINION

QBE MARINE & SPECIALTY SYNDICATE 1036,
MARKEL SYNDICATE 3000, STARR INS. &
REINSURANCE CO., MUNICH REINSURANCE CO.,
LIBERTY MUTUAL INS. EUROPE LTD., AND
CATLIN INS. CO. (UK) LTD,

                    Defendants.

-----------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiff

          BLANK ROME LLP
          405 Lexington Avenue
          New York, NY 10174
          By:  Jared Zola, Esq.
               James Carter, Esq.


          Attorneys for Defendants

          BRUCKMANN & VICTORY, LLP
          420 Lexington Avenue, Ste. 1621
          New York, NY 10128
          By:  Richard J. Sprock, Esq.
               Robert Louttit, Esq.
               Mark Bruckmann, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1|19|17

**Sweet, D.J.**

Defendants QBE Marine & Specialty Syndicate 1036,
Markel Syndicate 3000, Starr Insurance & Reinsurance Company,
Munich Reinsurance Company, Liberty Mutual Insurance Europe
Limited, and Catlin Insurance Company (UK) Limited (the
"Defendants") moved pursuant to Rule 56, F. R. Civ. P. for
summary judgment dismissing the complaint of plaintiff
Petroterminal de Panama, S.A. ("Petroterminal" or the
"Plaintiff"). Plaintiff simultaneously moved for partial
summary judgment for a determination that Plaintiff has made a
prima facie showing for all risk coverage under the insurance
policy. Based upon the findings and conclusions set forth
below, Plaintiff's motion for partial summary judgment is
granted, and Defendant's motion for summary judgment is denied.

**Prior Proceedings**

The Plaintiff initiated this action on October 28,
2014 alleging claims for breach of contract, specific
performance, and declaratory judgment for issues relating to
whether certain insurers are required to pay for damage caused
by a fallen pile. The instant motions for summary judgment were

1

filed on June 13, 2016 and were heard and marked fully submitted
on September 22, 2016.

**The Facts**

The facts have been set forth in the parties'
stipulation of undisputed facts as well as Plaintiff and
Defendants' Statements of Material Facts per Local Civil Rule
56.1, which are not in dispute except as noted below.

Plaintiff stores and transports crude oil and
petroleum products with terminals on the Atlantic and Pacific
coasts of Panama.  Zola Decl., Ex. 3, P. Ripp Dep. Tr. at 11:2-
8, 27:24-28:13.  This case concerns Plaintiff's Pacific
Terminal, which includes Piers 1 and 2, both of which were used
for loading and unloading petroleum.  Amended Stipulation of
Undisputed Facts, ¶ 3.  Pier 2 contained four "breasting
dolphins" used for mooring and berthing operations.  Id. at ¶ 4.
Each breasting dolphin consisted of a steel pipe pile and a
pivoting timber-faced fender panel.  Id. at ¶ 5.

These piles were all installed in 1984 in order to
increase the pier's capacity to accommodate larger vessels and
were built with a larger diameter than the original piles.  Id.

2

at ¶ 8.   Each of the steel piles was comprised of several
sections that were attached to one another using a
circumferential weld.   Id. at ¶ 10.   The outer breasting
dolphins have an outside diameter of 110¼ inches and the two
inner breasting dolphins have a diameter of 78¾ inches.   Id. at
¶ 8.

        On February 10, 2012, a hull oil tanker, the Maya,
carrying 380,742.87 GSV (US barrels) was being moored to Pier 2,
using the 78¾ inch diameter steel pile of the southern inner
breasting dolphin pile ("Pile PDB-2AA"), when Pile PDB-2AA fell
over.   Id. at ¶ 13, 15.   Prior to February 10, 2012, Pile PDB-
2AA was standing and was being used regularly to moor vessels to
Pier 2.   Id. at ¶ 14.   At first, the pile came to rest against
another pile and was chained there.   Id. at ¶ 15.   After the
Maya was moved to Pier 1, the fallen pile segment was unchained
and allowed to fall and rest on the seabed.   Id. at ¶ 16.

        It is undisputed that standard mooring procedures were
followed on February 10, 2012.   Id. at ¶ 17.   The parties
dispute the cause of why the pile fell on February 10, 2012.   A
portion of the failed pile was retrieved, and the parties agree
that it failed at a point above the mudline.   Id. at ¶ 18-20.

                                    3

The parties stipulated that all four of the breasting dolphins at Pier 2, including Pile PDB-2AA, are covered under the insurance policy. Id. at ¶ 6. This policy was in effect from January 15, 2012 through January 15, 2013. Id. at ¶ 2. The insurance policy "insures against all risks of physical loss or damage occurring during the period of this policy from any cause . . . except as hereinafter excluded." Zola Decl., Ex. 2, Ex. A at 00053 CANDL. However the policy excluded a number of potential perils, including "gradual deterioration, corrosion (but this policy does not exclude corrosion occurring from a sudden and accidental event), inherent vice, . . ., ordinary wear and tear, unless loss or damage by a peril not otherwise excluded ensues and then the policy shall be liable for only such ensuing or resulting loss or damage." Id. at 00062 CANDL.

**The Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary

4

judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." Anderson, 477 U.S. at 247-48 (emphasis in original).

**Plaintiff Has Established a *Prima Facie* Case for Coverage under the Policy**

Plaintiff moves for summary judgment on the issue that Plaintiff satisfied its burden of proving a *prima facie* case of all-risk coverage, thereby transferring the burden to Defendants to prove that the collapsed pile in this case falls under an exemption to the all-risk insurance policy.

In order for an all-risk insured to establish a *prima facie* case for recovery, they must prove: "(1) the existence of

5

an all-risk policy, (2) an insurable interest in the subject of the insurance contract, and (3) the fortuitous loss of the covered property." Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002). In this case it is undisputed that the first two prongs are satisfied. First, the insurance policy "insures against all risks of physical loss or damage" satisfying the requirement that the policy insure against all risks. Zola Decl., Ex. 2, Ex. A at 00053 CANDL. Second, the parties stipulated that all four of the piles, including Pile PDB-2AA, are covered under the insurance policy, creating an insurable interest in the property. Amended Stipulation of Undisputed Facts, ¶ 6.

The parties dispute the third prong of the test: whether the loss was fortuitous. On the one hand, "The burden on the insured with respect to demonstrating a fortuitous loss under an 'all-risks' policy . . . is relatively light." Int'l Multifoods Corp., 309 F.3d at 83. Further, "All risk coverage covers all losses which are fortuitous no matter what caused the loss, including the insured's negligence, unless the insured expressly advises otherwise." Id. (quoting Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 307 (2d Cir. 1987)). On the other hand, "A loss is fortuitous unless it results from an inherent defect, *ordinary wear and tear*, or intentional

6

misconduct of the insured. Id. (emphasis added). Plaintiff "need not prove the precise cause of the loss;" just that the loss was fortuitous. Id. (quoting In re Balfour MacLaine Int'l Ltd., 85 F.3d 68, 77-78 (2d Cir. 1996).

The issue is whether Plaintiff satisfied its "relatively light" burden for fortuity that the cause of the collapsed pile was not ordinary wear and tear. A fortuitous event is defined by New York Insurance Law as "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party." N.Y. Ins. Law § 1101(a)(1)-(2). However, "normal wear and tear" cannot be fortuitous because under New York law it "is not an insurable risk, but a certainty." Contractors Realty Co. v. Ins. Co. of N. Am., 469 F.Supp. 1287, 1293 (S.D.N.Y. 1979).

Here, Plaintiff has met its burden for fortuity. First, Plaintiff introduced evidence that the pile was designed for infinite life and therefore should not have failed from wear and tear after only 28 years. Second, Plaintiff's expert identified indications that the pile collapsed because of an overload event instead of ordinary wear and tear.

7

Plaintiff introduced evidence that the pile was designed for an infinite life, which contradicts the theory that regular wear and tear caused the pile's collapse after only 28 years. The engineer who designed the piles, H. Brant Brown, submitted a sworn declaration attached to these motions that the pile in this case was designed for indefinite fatigue life and would not fail absent "corrosion or a mishap." Brown Dec. at ¶ 10.

Plaintiff introduced evidence from an expert witness, Dr. Kenneth Gall from Duke University, and an engineering consulting firm, Mueser Rutledge, to establish that the cause of the failed pile was not ordinary wear and tear. Dr. Gall testified that he examined the failed pile and that from this examination he concluded that the pile failed from one or more overload events that caused cracks to develop in the pile. Gall Dep., Dkt. 49-10, at 41:8-24. Specifically, Dr. Gall's report concluded:

> In the present catastrophic failure, the existence of the fatigue is the issue because fatigue should not have occurred in the first place. Although fatigue is a gradual process by its defining nature, structures designed to the endurance limit approach do not fatigue from stresses below the endurance limit. The only explanation for fatigue failure in the pile is an unforeseen stressing event, or overload, which could occur in several different ways, including when a ship impacts or presses against the pile with excessive force, that caused the start of the fatigue process.

8

Dr. Gall Dec., Ex. A at 10.

Defendants create a disputed issue of material fact with their own expert reports that the pile was not designed for infinite life and that the pile collapsed from regular wear and tear. However, the "relatively light" burden for Plaintiff to establish fortuity does not require the Court to resolve this battle of the experts at this stage. Plaintiff has demonstrated fortuity because when a pile is designed for an infinite fatigue life, an overload event is "to a substantial extent beyond the control of either party." N.Y. Ins. Law § 1101(a)(1)-(2).

Plaintiff's motion for partial summary judgment is granted and Plaintiff has met its *prima facie* burden to establish coverage under the all-risk policy.

**Defendants' Motion for Summary Judgment Is Denied**

After Plaintiff makes out a *prima facie* case for coverage, Defendants must "com[e] forward and show[] that there was no coverage of the loss." In re Balfour MacLaine Int'l Ltd., 85 F.3d at 78. Defendants argue that the wear and tear exclusion from the insurance policy applies, but Plaintiff's have created a disputed issue of material fact regarding the

9

proximate cause of the pile's collapse.  For the reasons that
follow, Defendants' motion for summary judgment is denied.

When an insurer seeks to disclaim coverage based on a
policy exclusion, the insurer "'must establish that the
exclusion is stated in clear and unmistakable language, is
subject to no other reasonable interpretation, and applies in
the particular case and that its interpretation of the exclusion
is the only construction that [could] fairly be placed
thereon.'"  Rapid Park Indus. v. Great N. Ins. Co., No. 09 Civ.
8292(JSR), 2010 WL 4456856, at *3 (Oct. 15, 2010), aff'd, 502
Fed. Appx. 40 (2d Cir. 2012) (quoting Parks Real Estate
Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d
33, 42 (2d Cir. 2006)).

Here, the policy stated in clear language that damage
resulting from "ordinary wear and tear" was excluded from
coverage under the policy.  Zola Decl., Ex. 2, Ex. A at 00062
CANDL.  Plaintiff does not dispute that wear and tear is a
proper exclusion, and Defendants do not dispute the possibility
that there may have been an overload event at some indeterminate
time before the pile collapsed.  Instead, the parties dispute
whether wear and tear or an overload event proximately caused
the pile to collapse.

10

To determine "cause" in the insurance context, New York courts must determine the "efficient or dominant cause of the loss," not the event that "merely set the stage for that later event." Home Ins. Co. v. Am. Ins. Co., 147 A.D.2d 353, 354, 537 N.Y.S.2d 516 (1st Dep't 1989); see also Kula v. State Farm Fire and Cas. Co., 212 A.D.2d 16, 20, 628 N.Y.S.2d 988 (4th Dep't 1995) ("Only the most direct and obvious cause should be looked to for purposes of the exclusionary clause"). Further, between competing potential causes "the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings." Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co., 505 F.2d 989, 1006 (2d Cir. 1974).

Defendants argue that the proximate cause in this case was ordinary wear and tear and even if there was an overload event, it was a cause, but not the proximate cause, of the pile's collapse. To support this position, Defendants point to Album Realty, a case in which the New York Court of Appeals held that when a sprinkler in a building froze and ruptured, the damage was caused by the water that flooded the building, not the freezing temperatures. Album Realty Corp. v. Am. Home Assur. Co., 80 N.Y.2d 1008, 1010-11, 607 N.E.2d 804, 592

11

N.Y.S.2d 657 (1992). Similarly in Home Ins. Co., hot water and steam escaped from an open drain causing electrical arcing, which ultimately led certain electrical systems to short circuit. Home Ins. Co. v. Am. Ins. Co., 147 A.D.2d at 354. "[W]hile it is apparent that the introduction of moisture into the bus duct facilitated the electrical injuries in this case, it is also apparent that the losses themselves were not moisture injuries." Id.

However, those cases are different from the instant case because Plaintiff's have raised a disputed issue of material fact as to whether the overload was the "efficient or dominant cause of the loss," not the event that "merely set the stage for that later event." Home Ins. Co. v. Am. Ins. Co., 147 A.D.2d at 354. Here, Plaintiff has presented evidence to show that the pile should not have collapsed absent an overload event because of the pile's infinite fatigue life. Brown Dec. at ¶ 10. When the pile collapsed, the loss was the pile's failure and cost of replacement. Yet in Album Realty freezing temperatures did not cause the damage. The loss was from water damage. Likewise in Home Insurance Company, the loss was from the electrical arcing not moisture. Plaintiff here has introduced sufficient evidence to create a disputed issue of material fact as to whether that separation between the alleged

12

cause and the proximate cause found in Album Realty and Home
Insurance Company exists in this case.

Other courts have not applied the wear and tear
exception when an overload event caused a loss requiring
replacement of the equipment. In 20 East 33 Owners Corp. the
wear and tear exception did not apply when an already
deteriorating, but still functioning pipe was accidentally
ruptured by a contractor. 20 East 33 Owners Corp. v. Great Am.
Ins. Co., No. 95 Civ. 2642 (KTD), 1996 WL 438172, at *2-3
(S.D.N.Y. Aug. 5, 1996). After the rupture, the gas pipe could
not withstand the required extreme pressure test required after
experiencing a rupture of this kind and accordingly needed to be
replaced. Id. at *3. Similarly in this case, the pile was
functioning up until the point when it experienced an overload
event. Based on the evidence Plaintiff introduced, Defendants
have not proven as a matter of law that no reasonable jury could
find that the overload event was the proximate cause of the pile
collapsing, particularly because the pile was designed for an
infinite fatigue life.

For these reasons, the Defendants motion for summary
judgment is denied.

13

**Conclusion**

Based upon the findings and conclusions set forth above, Plaintiff's partial motion for summary judgment is granted, and Defendants' motion for summary judgment is denied.

It is so ordered.

New York, NY
January 18, 2017

ROBERT W. SWEET
U.S.D.J.

14